This morning we have two cases which will be orally argued and two which are submitted on the briefs. The first orally argued case is 2008-1430, Transcorp v. Electronic Transactions. Mr. Robinson, you are reserved two minutes for a rebuttal, and why don't you proceed whenever you're ready. Good morning. I have two minutes for rebuttal reserved, and I would like to introduce Trevor Arnold, who is Patent Counsel at Wilber Industries. As noted in the briefs, this case involves a settlement agreement arising in a prior lawsuit by Transcorp against Mark IV Industries of Canada. This appeal has been brought because the District Court, in our view, improperly rewrote that settlement agreement based upon a clear misapplication of the law of exhaustion and missed our case against BTC. The subject matter of these cases... If you don't mind, I'd like to start. Let's pretend Jacobs v. Nintendo is distinguishable. I definitely understand the arguments that you put forth in your brief as to why it's not. But I want to get to the heart of the underlying dispute regarding whether or not the covenant not to sue ought to be treated the same way as a license under the Supreme Court precedent of quanta. Okay. And again, I think Jacobs is the best reason that it is. And I appreciate you want me to ignore Jacobs, but let's focus on quanta. Quanta makes analysis of the structure of the agreement paramount. In the quanta decision, this quanta came down two weeks after the decision that's currently at issue. Quanta says you must examine the structure and exhaustion is triggered only by a sale authorized by the patent owner. And what did the Supreme Court do in quanta to determine authorization? It looked at the language. The language in quanta, the language of the Lucky Goal or LG Intel agreement said unambiguously that Intel had the authority to make use and sell free of LG's patent claims. That's the authorization. That is consistent. Quanta didn't so much rewrite the law. Yes, it changed a bit on method claims and the like. But fundamentally, authorization, and you can look at the other cases which have been discussed in the brief, authorization is an explicit right. The words are important. What do you mean explicit right? I mean there are implied licenses in all sorts of situations. Why shouldn't an implied license be created by a covenant not to sue? Well, quanta is not an implied license case. Yes, I understand, but what we have is two issues here. First, did the settlement agreement create an implied license and then was there exhaustion as a result of an authorized sale? So focusing first on the implied license, there are all sorts of situations in which you don't have to have an express license. You can have an implied license and I think what Judge Moore is asking and what I'm asking also is why doesn't a covenant not to sue create an implied license? Because a covenant not to sue is not an authorization and because in the implied license jurisprudence of this court says the legal standard is are there no non-infringing uses and do the circumstances reflect an implied license? Now the circumstances here are again focusing on the matter of intent. The excluded intent evidence showed that no customers were included. Mark 4. But didn't the Supreme Court in quanta specifically say you don't look to intent to decide exhaustion? Well, but exhaustion is different from an implied license. I don't want to get cross ways here. The answer to the implied license question and it's important that below ETC argued and the district court said they had an implied license based on no non-infringing uses. Now ETC says well it doesn't apply here. That's what they said below. So I think there's a clear error of the district court on the implied license. But put aside that question of non-infringing uses. Is there any other reason that one shouldn't imply a license as a result of a covenant not to sue? It's a general matter. I think because a covenant not to sue is not an authorization. A covenant not to sue merely says we're not going to sue you. But how is a license any different than that? I don't see how a license is any different than a promise not to sue because you know you're a patent attorney. I know your background. You know that a patent conveys nothing but a right to exclude. I understand that Judge Moore. And so how is a license the ability to convey anything but a promise not to exclude? To reach that conclusion and I don't know whether you want me to still ignore Jacobs. You've got to ignore Jacobs. Jacobs and Quanda stick together. I want you to keep ignoring Jacobs. We may give you time to address Jacobs. We understand those arguments. We understand those arguments clearly. What we're obviously struggling with is looking at a covenant not to sue and a license and truthfully not seeing much of a difference between the two, especially in this case where your covenant not to sue involved the payment of a lump sum of money up front. There's a lot of indicia that suggests to me this is a license just using slightly different words and I'm not sure that matters. And so I'm trying to get to the heart of why you think we ought to announce a ruling that Quanda and that concept doesn't apply to covenants not to sue. It only applies to licenses. Because Quanda says you've got to have authorization. Is authorization a sale under Quanda? I don't quite understand. Well, when the Supreme Court in Quanda looked at the LG Intel license, what did they find? They found there was a broad authorization to make, use, and sell. I don't think after Quanda you can simply say- Wait, broad authorization to make, use, and sell. A patentee can't authorize someone to make, use, and sell. Well, but if you- All a patentee can do is authorize someone to say I will not exclude you under my patent rights. I authorize you under my patent rights, but I can only authorize you to do what I have the authority to give you to do. If you take that position, then it is to ignore the reasoning in Quanda, which goes right back to Univis Lens, about what the patentee told the licensee. Now, and it's also to say that every license out there which says I as a patentee authorize you as a licensee to make, use, and sell, and the like, isn't really a valid transfer because a patentee can't do that. I as a patentee can certainly say I give you the right to make, use, and sell to the exclusion of myself. That's what an exclusive license does. Words are important. Mr. Robinson, would it make any difference if it was not headed as a covenant not to sue, but instead as a non-exclusive license? What difference would it be in the same document? Ignoring Ian Jacobs? Yes, ignoring Jacobs. Because I think that's, you know, your jurisprudence compels it. I think there's a tremendous difference because on the one hand you are telling someone you have an explicit right to make, use, and sell. I may want royalties. You may be able to sub-license. There's all kinds of complex transactions that can result from an authorization. How about a paid up, fully paid up, non-exclusive license? Does that make any difference? It says you can do anything you want. I won't sue you for a certain amount of dollars. Well, at the end of the day, the person's not going to get sued. Always lawyers... For practicing the invention. Right. Making, selling, manufacturing, whatever. Right. But keep in mind, QANTA did not proceed down an exclusion, the right to exclude. That has never been a part... Yeah, but QANTA's not really dealing with what creates an implied license. It's an exhaustion case. It doesn't have something to do with what we're doing. Our focus is on the settlement agreement and whether the covenant not to sue created an implied license. The problem is a covenant not to sue for past conduct, certainly, in most cases anyway, doesn't create an implied license. But this is clearly a covenant not to sue for future conduct. How could that not create an implied license? Well, again, I don't want to get crossways on this because there are three basic rulings that the district court made. One is exhaustion, one is implied license, and one is estoppel. So a covenant not to sue... But focus on the settlement agreement. Focus on the covenant not to sue is for the future. How can that not create an implied license on the part in Mark IV? Because, Mark, we said in the release, explicitly, no implied license or no express license is created. Under the relief. It's all one integrated agreement. It's all something... All right, put that aside. Put that... Ultimately, from Jacob's aside, the language aside, I'm not in space now. I'm floating. I understand the problem. That's the way it is. I'm great at doing hypotheticals. It's all hypothetical. I understand that. But put Jacob's aside and put that sentence in the release paragraph aside. Why, under circumstances like that, wouldn't a covenant not to sue create an implied license? To whom? To anybody who is... to ETC who didn't sign up? No, no, no. To Mark IV, the other party to the agreement. I don't... well... You know, then you get back to Judge Moore's question. Is any covenant a license? I don't think the cases support that. Could you say, at some level, a promise not to sue? I mean, the cases say a naked license is essentially a covenant not to sue. There is no case that says the converse. There is no case that says a covenant not to sue is a license or an implied license. The implied license... But regardless of whether it is or not, we can still decide the issue of whether a covenant not to sue ought to be treated for exhaustion purposes the same way the Supreme Court treated Quanta. Well, to do that, though, Judge, you have got to overrule some of your own precedents. To reach that, you've got to overrule Jacob's. And I think, you know, the lawyers all deal with precedent and with the body of law that we meet. If you take exhaustion, you go all the way back to Univis Lens. Every one of those cases look for an explicit right to make, use, or sell. If you look at the covenant not to sue cases, there is not one case. This is truly a case of first impression, which is probably the basis for your question. Whether a covenant not to sue is a license, there is no case that so holds. The implied license cases look at the non-infringing use, look at the circumstances. And I'm getting back to the judge's question. There is no circumstance here in which people say, you know, there is no implied license whatsoever that would possibly justify the conclusion that a covenant not to sue is a license. It just isn't. But does it depend on the language that's used in the settlement agreement? My point. What happens in a situation where we do strike that language, making it not a covenant not to sue but a non-exclusive license? Then you run smack into the wave to what everybody agreed to. I mean, Mark IV in this case was facing a large exposure for past damages. It freely bargained for. There were a phalanx of lawyers here in San Francisco when we negotiated that deal. There were more lawyers than there were clients that day. There were vice presidents, presidents, New York firms. It was an amazing thing. They freely negotiated for a release for themselves for the past. Nobody else had a narrow right not to be sued in the future. I don't think, with all due respect, this court and certainly the district court in Texas has the right to come in and write into the covenant where it said it only applied to 10 patents, an 11th patent. It did not have the right where we say no express, no implied license whatsoever. These big guys, these fancy lawyers, the New York firms, the California firms, didn't know what they were talking about. We're going to come in and rewrite the deal for the parties. It's not, again, with all due respect, the province of the district court or this court to do it. And this court also has had the overarching policy that is Trump-lead. And it should Trump-faunted, to be quite honest, as I said in our brief, of upholding settlement agreements. What the court should do is respect the agreement, respect the fact that Mark IV, facing a large liability, agreed there was no express or implied license, went for a covenant not to sue, didn't want a license, and that's the procedural posture of this case. It was not for the court in Texas or any other court. So, with so many lawyers in the room, you're saying that the agreement is clear, right? It's unambiguous? You don't need parole evidence to clear it up? No, sir, I don't. I don't think that when we have patent counsel who sign off as to form and substance, we have a long negotiation in San Francisco, we have an extensive email negotiation that is proper for the court to come in and rewrite it. But it sounds to me like your problem is with Quanta, because the Supreme Court said intent is not relevant because they were concerned with protecting the market. Not protecting the intent of the two parties to the contract, but protecting the market, i.e., the downstream users. And so the Supreme Court made this determination. So whether you and all your lawyers and they and all their lawyers only wanted to protect each other, Supreme, if you had used the word license, you agree, you'd be under Quanta, right? If the word had said license, not covenant, not to sue. No, if the words, we authorize you, I'm in trouble with Quanta. I think Quanta and Jacobs go hand in glove. That's what we said in our brief. The problem, if we said make, use, and sell, no problem. Quanta does not necessarily... You don't have to say make, use, and sell. You could just say license. A license under the patent rights. For what? You tell me. You're an attorney. If a contract said, I give you a license under my patent rights, what would that entitle you to do? Would entitle you to do everything... That the person could convey to you under the patent rights. But maybe it wouldn't convey an offer to sub-license. But I kind of disagree with you. I know I'm flashing out of time. Mr. Roberts, why don't you answer the question? Give me more time. Quanta does not deal with the issue of intent. The issue of intent comes up on legal estoppel. It comes up on implied license. Quanta deals with structure. Quanta deals with words. Now, if we stop saying words... I think what Judge Moore is asking is, if there were an express license here to Mark IV, then under Quanta, Mark IV could sell these products to somebody else. And the purchasers wouldn't be infringing because of exhaustion, correct? I mean, you don't disagree with that, do you? If we said Mark IV could make, use, and sell, then by definition, Mark IV could make, use, and sell. You couldn't sue Mark IV's customers under Quanta, right? Without carving it out. Maybe I could say Mark IV could make... If you had a different agreement. If I had the traditional license... But under this agreement, if it said Mark IV has an express license, you could not then sue Mark IV's customers because of patent exhaustion, right? Right. But that's not what we did. We didn't give them. That was the point. That might have cost Mark IV a lot more money. I mean, that's why they bought Peace, not Custodian. But you didn't put any limitations on their ability to sell, in the words of Quanta, did you? You didn't put any limitations on their ability to sell. Oh, sure we did. We didn't give them that ability. Sure you did. We didn't. You said you wouldn't sue them for them. That doesn't. You said you wouldn't sue them if they sold it. I said we wouldn't sue them for any purpose. But again, we've got to be floating in space because we're not focusing on Jacobs. If you look at Jacobs, we did exactly what was consistent with your precedent. We gave them the right of Peace. The right of Peace, as this Court has defined it, is the right to be free from suit.  You distinguished, not you personally, but the Court has distinguished Peace from prosperity. Prosperity is where you give someone the affirmative right to make, use, and sell. We didn't do that. And if you look at Jacobs, if you look at every place the word authorization is used. Counsel, Jacobs wasn't an exhaustion case. Of course not. It was before concepts of exhaustion really had percolated to modern-day status by any extent. And on top of that, in Jacobs there were two different clauses. Basic contract principle says that you need to look at two different clauses and interpret them differently. We don't have two different clauses here. We have one. We have a covenant not to sue. We have no evidence beyond the language of the contract as to how that ought to be treated differently from a license as existed in Jacobs. You have all the evidence, Judge, that was excluded by the District Court improperly. And you have the evidence of the release, which is part of this integrated contract, which says there is no license whatsoever. Now, I don't know. The English language only goes so far. But if two sophisticated parties represented by a bunch of lawyers come in here and agree, there's no express or implied license. I don't think that can be ignored. It's not consistent with the case law. It's not consistent with upholding settlement agreements and broken records. But it's not consistent with Jacobs because this court in Jacobs distinguished the right of peace from the right of prosperity. Mark Ford bargained for, and for its $4.5 million got, they got a release from a huge liability in the past. They got a very narrow, we won't sue in the future. It would have cost them a lot more for anything else. Okay? We'll restore your two minutes for rebuttal. Thank you very much, Mr. Robins. Mr. Emerson. Thank you, Your Honor. May it please the Court. This is an exhaustion case. No, wait. It's not an exhaustion case. It is. Wait, wait, wait, wait. First you've got to apply an implied license to Mark Ford. And then you apply the exhaustion doctrine to the sales by Mark Ford. So the first question is exhaustion doesn't apply because in the settlement agreement there wasn't any sale of anything. You have to find an implied license from the covenant before you get to the exhaustion step. Right? I would disagree with that, Your Honor. You disagree with that? Thank God. The covenant not to sue, a covenant not to sue is a license. Well, that's the question. It is expressed. But that's the real question, isn't it? That is the question. That's the issue. How do we find it to be a non-exclusive license or an implied non-exclusive license? I believe it is an express non-exclusive license because the only thing that a patentee can authorize another to do under his patents is to allow the licensee to practice the patents without interference from the patentee. That's the only right that he can grant. And the cases are unanimous. Well, the statute says that, doesn't it? The statute says that. It's not even a matter of case law. Section 154 says that a patent is the right to exclude. And it is the right to exclude others from practicing the patent. And what does it mean to practice a patent? You practice a patent by making, using, selling, offering to sell, or importing infringing goods. If that were the case, then, why didn't Mark Ford come back and say, well, instead of a covenant not to sue, let's put it in as a non-exclusive license? They didn't need to because a non-exclusive license or a bare license is nothing more than a covenant not to sue. And the case, not a single case cited by Transcorp rebuts that. Well, what about Jacobs?  Jacobs supports that. How about Jacobs? In the Spindle Fabric cases, as saying that a covenant not to sue is a bare license, or a bare license is nothing more than a covenant not to sue. So, Jacobs goes even further. Jacobs says that, Jacobs, in that case, argued that the license provision was nothing more than a bare license. And the court said no. Paragraph, I can't remember the paragraph, but the covenant not to sue is a bare license, citing intellectual property development and Spindle Fabric. Therefore, the provisions would have been redundant if the license provision was nothing more than a covenant not to sue. What this court focused on in Jacobs was the second sentence in the license provision, which said that analog devices had the right to sell the accelerometers specifically for use in tilt-sensitive game controllers. But in Jacobs, there were two separate sections in the agreement. Yes, sir. One was a license, identified as a license, and one was a covenant not to sue. That's right. So, we have surplusage of language? I'm sure lawyers never use surplus language in any agreement. We don't. We don't. So, why the distinction between the two? One identified as a license, and one identified as a covenant not to sue. I don't know why they did that. What the court in Jacobs focused on was that there were these two provisions. Jacobs wanted to interpret the license provision as simply a bare license and nothing more. The court said, no, that would make the covenant not to sue redundant, because a covenant not to sue is a bare license. So, the court focused on that second sentence of the license provision, which expressly authorized analog devices to sell the accelerometers for use in the infringing machines. Therefore, the parties obviously intended that analog devices be able to sell these products, and so, therefore, they implied a license arising from the license agreement, a license for the cousins. That's not the case in this case. Suppose Jacobs reconsidered them as a license, the license provision was for future, and the covenant not to sue was for the past infringement? No, sir. No, Your Honor. I don't believe so. That's not what it says. And back to your point about surplusage. Lawyers all the time say the same thing in different ways in these agreements. Suppose in this agreement there had been the covenant not to sue for future infringement, and the next sentence had said, however, this doesn't create an express or implied license in Mark 4. Suppose that had been right after the covenant not to sue. Would there be an implied license here? I still believe there would be an express license. Really? Why? Because a covenant not to sue, I mean, I don't see how that, a covenant not to sue is a license. A license is nothing more, a bare license is nothing more than a license to sue. But it says this isn't a license. They can't do that? Well, then the two provisions are inherently contradictory. All I can grant you is a covenant not to sue. I can't grant you the express or the affirmative right to practice my patent. All I can do is say, as the patentee, I will not interfere with your practice of my invention. Do you agree that lots and lots of patent licensing agreements are written up with this affirmative language? I agree that they are. That's certainly my experience. And lots of them also seem to incorporate ruling provisions. Covenant not to sue, and then also the licensing language. I mean, what I see in the Jacobs case isn't that uncommon from my own experience, having looked at lots of patent licenses, where you see, is it a CYA sort of thing? I believe so. Is that what it is? It could have been in Jacobs, certainly. Well, we don't have that in this case, though. We don't have any surpluses of language. Not really. We have a license and a covenant not to sue. This language is very clear. And, Your Honor, I sat in on the Ford argument yesterday, and unlike that case, this agreement was very clearly drafted. There was no ambiguity in it. And, in fact, Judge Bryson in that argument made this point to the Ford counsel, that can't we all agree that a covenant not to sue is a bare, non-exclusive license? And didn't Ford counsel say no, by the way? Yeah, he was wrong. Well, just so you know, I didn't want you to make an incomplete record. He was wrong. I think I will go with Judge Bryson in that case. He asked a question. He didn't make a statement. Is that enough? Okay. Well, in any event, Jacobs is certainly distinguishable because it is not an exhaustion case. It's an implied license case. Analog devices could not exhaust the patent rights by selling a mere component unless, under Quanta, that component substantially embodied the patent. That wasn't an issue in Jacobs. So that's why, in that case, it was so important to look at the language of the license provision. Okay. Would it make any difference if the language was changed to state this is a non-exclusive license? No, Your Honor. A non-exclusive license is nothing more than a promise not to sue. So instead of saying that we agree as in covenant not to bring any demand, claim, or otherwise, TCI hereby grants a non-exclusive license. That would be the same thing. The same difference. Under this Court's repeated pronouncements, it's the same thing. Except for Jacobs. Not even Jacobs. Jacobs cites with approval the cases that state a covenant not to sue is a bare license and distinguishes a bare license from the license provision in Jacobs as being redundant. If the license provision was a mere bare license, then it would have been redundant to the covenant not to sue in Jacobs. You both love Jacobs. Maybe at the end of the day, the fact is it's not clear.  It's possible. Quite possible, Your Honor. One of the other things that Mr. Robinson mentioned in his argument was that there was no authorization because they didn't use the words make, use, or sell. Again, that's in the patent statute. That's what a patent is. It's the right to exclude others from making, using, selling, offering to sell, or importing. Suppose this agreement had said, there's a covenant not to sue you mark 4 in the future, but this doesn't grant any express or implied license, and this isn't going to protect your customers from suit for patent infringement. Suppose it said that. I believe under Quanta, the same result. The same result. Yes, because the focus under Quanta is what was the authority granted to decide. Nobody's going to accuse you of not being aggressive in the positions you're taking. The question is, what was the authority granted to the seller? What you're saying is you give a covenant not to sue. There's no way that you can write the agreement so that it doesn't protect the customers. I'm not going to say there's no way. Here's what they should have done. Here's what Transport should have done if they wanted the result that they asked this court to end up with. They should have said, we covenant not to sue you under these patents for making or using. We do not covenant not to sue you for selling. Had they done that, clearly mark 4 would not have had the authority to sell, and therefore there would be no exhaustion. That's the answer, I think, to your question, Your Honor, and that's the answer to the dilemma that mark 4 finds themselves in today. They didn't do that. Mr. Emerson, there is some evidence in the record, parole evidence or otherwise, that mark 4 did try to do that, trying to protect its customers. What do you attribute that attempt to? That the agreement was not clear? That the aspect of the document itself did not cover its customers? I attribute that to the fact that lawyers will find any way, in multiple ways, to get what they want in an agreement. That's what I attribute that to. So you're saying it was redundant? That wouldn't have been redundant because had there been an express promise not to sue the customers, then this is a different case, or at least there is an additional grounds for dismissing it because if they promise not to sue the customer, then as a customer, we presumably would be covered most of the time. I don't understand what you're saying. How was this provision that they sought giving any additional rights beyond what you say the basic agreement already gave? It would have been an express promise not to sue the customers. Well, you've already said that that's the effect of the agreement anyway. The effect of the agreement is to authorize mark 4 to practice the patents, which includes the authority to sell products covered by the patents. It protects the customers? Indirectly. It's just a question of whether it's direct or indirect? Yes, Your Honor. The question in Quanta was, and they raised this very issue, was the Quanta court rejected it because in Quanta they were trying to direct the court to restrictions on the customer's rights under the patents. And the Quanta court said, that's irrelevant. The question before the court is, was the seller authorized under the patents? If the seller is authorized under the patents, then exhaustion applies. In fact, in Quanta, didn't they even attempt to put some language into the contract that would restrict downstream sellers from combining Intel and non-Intel parts? And the court struck it and said, I appreciate that you're all trying to bargain that way, but that language is not applicable because it wasn't a restriction on the sale from Intel. See, that's why I thought you were going to answer Judge Dykes' earlier question. When he was asking you about adding language to the contract that says, this is a covenant not to sue, but not an express license. I thought that I might, and do you agree with that or do you see that as different? I thought you might be pointing, you might have pointed to the Quanta language where the court said, yeah, you're free to include that language in the contract, but it doesn't actually mean anything because you didn't restrict sale. That's right, Your Honor. In Quanta, the focus was on what was the authority granted to the seller. And if the seller had the authority to sell under the patents, then therefore there was exhaustion. What the contract attempted to do to restrict the sellers, or correction, the purchasers used, the downstream customers used, was irrelevant. And the Quanta court expressly stated that, expressly stated that in that case. You mentioned, Your Honor, the parole evidence. Again, the parole evidence simply went to a restriction or not, or an exclusion. Let me suggest to you that you've got a much better answer on the parole evidence than you've given, and the answer is this, that if the parole, if that provision had been incorporated in the contract, the customers themselves would have had the right to make, use, and sell, whether or not they brought the product from Mark IV. Well, in order to be a customer, they would have had to buy from Mark IV. So I'm not sure that, I may not be understanding your question. I'm sorry, Your Honor, I want to answer your question, I'm not sure I understand it. The point is that under the language that Mark IV sought to include in the agreement, the customers themselves, regardless of whether they purchased from Mark IV, would have the independent right to make, use, and sell. And that that was not to be included in the agreement, which explains why that language was excluded. Yes, Your Honor. Yeah. That was a good answer. Yeah, that's a good answer. Do I have some additional time? We'll give you an additional two minutes to match up with Mr. Robinson. Before I go on, are there any more questions or issues about the covenant not to sue? That's part of the equation. That is the express license that authorizes Mark IV to sell these goods. The implied license runs to the 946 patent, which was the continuation it issued after the settlement agreement. And the district court properly held that there was an implied license to Mark IV under the 946 patent. Would there have been an implied license for the 946 patent if the 946 patent had been acquired by Transcor after the settlement agreement? Yes, and it was acquired after the settlement agreement. No, no, no, it was the pending application. It issued after. My question is if it were acquired afterwards, if Transcor had no interest whatever in the 946 and it just buys the patent after the settlement agreement, would it be able to enforce the 946 consistent with the settlement agreement? Yes, Your Honor. Why? Because the doctrine of legal estoppel holds that the licensor cannot, by his subsequent acts, derogate from the rights granted. This was the situation in the A.M.P. case. They had the license under the Bynum patent, then they executed that agreement, and then they went out and found the Vinson patent, which was a dominating patent. They bought that after the license agreement was entered into, and the court said you can't do that. What if it was not a dominating patent? It was just a related patent at that point in time. Even if it wasn't a dominating patent, it could still fall under the doctrine of legal estoppel to the extent that the enforcement of the 946 patent would interfere with the rights granted under the express license. So even if it were narrower, there could still be an implied license under the 946 patent if the 946 patent would interfere with the licensor's right to practice the licensed patents. But in this case, we don't have that. In this case, TransCorp, as we go through in great detail in our brief, repeatedly said that ETC infringed the 946 patent by virtue of infringing the earlier patents. Repeatedly said that. It said that you cannot practice the three earlier patents without practicing the 946 patent. So to allow TransCorp to assert the 946 patent against Mark IV would render commercially worthless the rights that it granted to Mark IV in the settlement agreement. And that's language from Jacobs, again, our favorite case. And if there are no further questions... Thank you, Mr. Armisen. Mr. Robinson, you have two minutes. Yeah, two minutes. Thank you. First off, as to what we said on 946 to follow up on the last comment made, we only said it was a broadened version of one. Yes, we contended that it infringed, but a contention of infringement is not enough. It's not enough for an implied license. It's not enough for a quanta. A quanta says you've got to show it substantially embodies. And Van Dyck, for an implied license case, says contention's not enough. I do want to follow up on a comment that Judge Moore... a question Judge Moore asked. I believe you asked, Judge, whether the license in quanta had provisions not written in the word regarding customers. That was in a separate agreement. Quanta says explicitly nothing in the license agreement restricts Intel's right to sell its microprocessors. It broadly permits Intel to make, use, and sell. So this customer notification provision was in a separate provision. It was not part of the core license. I also... No, no, no. The court says it wasn't a restriction on Intel's right to sell, but I understood it to be in the same license agreement because the same license went on to say, however, customers wouldn't be able to... I believe it's in a different piece of paper. Notification was what was in the separate license agreement. Right, that's what I'm saying. But that's not the same... The license agreement contained both the restriction and... It says see the notice. Pardon? I believe it says see the notice. I don't... But the point is whether Intel had to notify its customers was not a restriction on Intel's own ability to make, use, and sell. That's the point. And it's the point of Jacob's because Jacob says... There's no restriction here on the ability to sell. Of course there was. There's a covenant not to sue. There's a covenant not to sue. At present, there is no restriction vis-a-vis these patent rights on their ability to sell them. There is. There was a clear... Is there? I'll phrase it as a question because I made it as a statement. There's no mention of the right. Is there a restriction? You are a patent lawyer. Is there a restriction? When you grant someone a covenant not to sue, is there a restriction on their ability to sell? There is nothing mentioned about it. I'm not asking you whether the contract mentions it. I'm asking you, in your experience as a patent lawyer, when someone gives you a covenant not to sue, do you believe you have any restriction on your ability to sell under those patent rights? If it merely said I give you a covenant not to sue, I would... It's the same question. It's a yes or no question. Well, let me ask a question. If someone authorizes you to walk, to sell, not to sue for trespass, is that an authorization to walk across the law? I don't know. We're not getting which way the hypotheticals go here. No, but I'm serious. If I say I'm not going to sue you, you can do anything you want. Let's go back to my question. Is there any restriction when I give you a covenant not to sue you under my patent rights? Is there any restriction under my patent rights for your ability to sell? A covenant not to sue you, is there any restriction on your ability to sell? There is no express restriction. But that's where Jacobs comes in. Jacobs says if all that Jacobs intended to do to the settlement agreement was to free Analog of its liability, the covenant not to sue in paragraph 5 was sufficient. Paragraph 3, however, goes much further by granting Analog an affirmative right to engage. So it is this court which has drawn the distinction between a covenant not to sue and an affirmative right. So all I can do is point you back to what you've said. Mr. Robinson, I think we're all familiar with Jacobs. I would also say... 30 seconds. 30 seconds. ETC cites the IP development case, the TCI case as supporting them. What does that case say? That case says go back and look at the words. Terms, concepts aren't important. How you style an agreement is not important. So whether a covenant not to sue conceptually is a license is not the issue. The issue is what words were used. That's what the patent bar does when it reads the precedent and drafts licenses. It drafts. We are in the word business. Words are important. The words in this agreement do not justify the result of the district court. Mr. Robinson, thank you very much. The case is submitted.